UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-11294PBS

| | |
|---|---|
| The HipSaver Company, Inc., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| J.T Posey Company, | ) |
| Defendant | ) |

**AFFIDAVIT OF EDWARD L. GOODWIN**

I, EDWARD L. GOODWIN, make the following statement on the basis of personal knowledge and experience and under penalty of perjury:

1. For more than ten years, I have worked to invent, manufacture, and sell products used to reduce hip fractures, particularly for use by elders but also for use by athletes. My inventive technology for soft hip protectors includes air-holding protective foam pad construction such as that in my US Patent No. 6,519,789B2 and a washable protective pad such as my US patent pending pub. no. US2004/0078873A1, before the United States Patent and Trademark Office.

2. The soft hip protectors incorporate an open cell foam pad enclosed in an expandable air holding pouch as shown in Exhibit 1. Together, the pad and pouch have a substantial capacity to absorb and disperse energy associated with a fall and provide

1

fracture protection to the femur. The device is washable and is sewn into clothing and positioned geometrically to cover the femur in the event of a fall or other impact.

3.  My company, HipSaver, is a small, closely held company incorporated in the Commonwealth and operating from offices in Canton, Massachusetts. HipSaver has been in business since 1995. HipSaver's primary business is to invent, develop, manufacture, and sell soft hip protectors which reduce the potential for critical hip fractures in elder patients who suffer some 300,000 hip fractures annually in the United States.

4.  The J.T. Posey Company is the dominant supplier of hundreds of patient safety and support products. Posey routinely copies the work of other companies and then uses its market dominance to introduce "knock-off" products to the market. Posey operates nationwide through catalogs, internet sales (www.posey.com), and a national network of representatives and distributors. Posey markets to 17,000 nursing homes and 3,000 rehabilitation hospitals. In Massachusetts, Posey markets to more than 100 health care facilities.

5.  HipSaver markets to the same facilities in Massachusetts and nationally.

6.  In late 1998 or early 1999, three years after HipSaver introduced its soft hip protectors, Posey introduced a hip protector product under the mark, HIPSTER. [Exhibit 2] This product was a soft, removable hip protector but was poorly designed and not well received in the marketplace.

7.  Beginning in early 2001, Posey used purchased samples of HIPSAVER hip protectors from our company but did not identify itself as the purchaser. [Exhibit 3] Posey then copied much of the design of the HIPSAVER protector and introduced a

knockoff marketed initially as the HIPSTER III. [Exhibit 4]. Posey's product is now marketed simply as HIPSTER. It competes directly against our HipSaver products.

8. Posey's HIPSTER knock-off copies HipSaver's design. However, Posey's designed The HIPSTER with a surface area which is about 30% smaller than HipSaver, thus substantially reducing both the hip area which is protected and the dispersion of energy associated with a fall. *See* Exhibit 1.

9. This past winter, I learned that Posey was soon to start an advertising campaign aimed at HipSaver and challenging the safety of our products. I learned that Posey was telling customers that it had a "UCLA study" which would demonstrate the superiority of Posey Hipsters.

10. After some inquiries, I contacted Professor Vijay Gupta at the University of California at Los Angeles, and I learned that Posey had retained one of Professor Gupta's graduate engineering students at UCLA, Bimal Ghandi, to conduct comparative tests of hip protectors and then to collaborate on a "White Paper" [Exhibit 6]

11. Shortly before Posey launched its advertising campaign against us, I obtained a copy of the "White Paper". Posey uses the "White Paper" in its advertising campaign against HipSaver, and Posey references the "White Paper" as justification for false advertising in its catalogs.

12. I also learned that Mr. Ghandi was studying for a Master of Science degree in biomedical engineering. He was not and is not an expert in the field of biomedical or biomechanical engineering, and his test work at issue here was not subjected to expert peer review. I also reviewed his website [Exhibit 5], and I have reviewed his thesis.

13.     Mr. Ghandi claims to have tested five "hip protectors". In fact, his test protocol did *not* include tests of hip protectors. Mr. Ghandi and Professor Gupta have both acknowledged that the hip protectors were stripped and reduced to core materials only. As Dr. Hayes notes in his expert report, expandable air holding pouches are a critical energy dispersing component of our HipSaver products, yet Mr. Ghandi stripped, discarded, and excluded the pouches from the tests. The "White Paper" and Posey's catalog advertising do not disclose this important fact and misrepresent Mr. Ghandi's study as if it were a study of hip protectors. Dr. Hayes describes this misrepresentation as fraud in his expert report.

14.     By excluding a critical energy dispersing component of our competing product, Posey and Mr. Ghandi were able to distort test results and misrepresent the relative safety of HipSaver.

15.     Posey and Mr. Ghandi also misrepresented, distorted, and biased test results by excluding the results of another competing hip protector which, even in a rigged test, outperformed Posey's HIPSTER. While the correct results are set out in Mr. Ghandi's thesis, he misrepresents the results in his "White Paper", and, Posey makes the same false statements in its catalog advertising.

16.     Posey and Mr. Ghandi falsely claim also to have included two HIPSAVER protectors among the five tested "hip protectors", one identified as HIPSAVER and another identified as "SLIMSAVER". HipSaver does not have a product under the name, "SLIMSAVER". I asked Professor Gupta about this, and he identified the so-called HIPSAVER protectors by color, "blue"; by substance, "rubber base"; and cross sectional dimension, "9mm". However, as shown in Exhibit 1, HIPSAVER protectors are

pink/orange in color, do not include a rubber base but incorporate homogeneous foam, and have a cross sectional dimension of 12.7 mm. It is clear from this that Mr. Ghandi did not even include our products in his study. He studied some other product but mistook or mislabeled it as HipSaver.

17.    Posey's advertising is distributed to more than 17,000 customers. Posey is now broadly distributing Mr. Ghandi's "White Paper" and its false catalog advertising to customers in Massachusetts and across the country. The "White Paper" suggests that it is a summary of Mr. Ghandi's testing "conducted at UCLA". In fact, it contains deceptions, fraudulent misrepresentations, and false test comparisons. Even the reference to UCLA is a misleading suggestion that UCLA stands behind or otherwise legitimizes this deception.

18.    I have contacted UCLA's lawyer, Patricia M. Jasper about Posey's reference to UCLA. UCLA has not authorized use of its name in Posey's advertising.

19.    The "White Paper" first makes the false statement that "hip protectors" were tested when, in fact, only stripped core materials were tested. The "White Paper", which is aimed at HipSaver as Posey's only significant competition, next makes the false statement that HipSaver protectors were tested when, in fact, none was tested.

20.    The "White Paper" also makes the false statement that four "hip protectors" were tested when only the core materials from five hip protectors were tested. [Exhibit 6 at 9] As noted in Dr. Hayes' expert report, Posey and Mr. Ghandi excluded the test results from the core material of the fifth protector because it performed, even in a rigged test, at a higher level than the Posey HIPSTER core material. [Exhibit 7, excerpt from Mr. Ghandi's thesis at 48] Then, the "White Paper" makes the false statement that "the Posey

Hipsters have shown superiority when tested *in vitro* compared to those of other competitors". [Exhibit 6 at 9]  And the "White Paper" makes the false statement that "Posey hipsters ... outperformed all competitive hip protectors tested". [Exhibit 6 at 9]

21.     Posey uses the false representations, statements, and comparisons from the "White Paper" to justify false comparative charts and statements in its 2004 product catalogs. [Exhibit 8]  The catalogs state that Posey's HIPSTER "outperformed all hip protectors tested at UCLA".  And the catalogs include a completely false bar chart purporting to demonstrate the relative safety performance of HIPSTER and competing products, including two identified as HipSaver products.  Posey's catalogs go on to proclaim in large bold letters, " POSEY HIPSTERS PROVEN MOST EFFECTIVE IN ON-VITRO TESTING".  Finally, the catalogs proclaim falsely, " In in-vitro laboratory testing performed at UCLA, Posey Hipsters were shown effective in reducing the force of impact in simulated falls to 36% below the average fracture threshold of the proximal femur, and Posey Hipsters outperformed all other energy-absorbing foam hip protectors tested."

22.     Every one of these statements is false and damaging to our small company.  The "White Paper" and some 50,000 copies of Posey's catalogs with these claims have been distributed to customers in nursing and rehabilitation facilities across the United States, including more than 100 customers in Massachusetts.  The "White Paper" and catalogs are distributed also at trade conferences and exhibitions across the country.  The catalogs have a shelf life of at least a year and are referred to routinely by health care workers who purchase patient safety and security products.

23.    The "White Paper" is also used in Posey's telemarketing and Internet marketing. For example in an e-mail message, a Posey telemarketing sales representative refers to the 'White Paper" as having "scientifically validated" the Posey HIPSTER. "In fact, they are scientifically better than the "HipSaver". You might want to check out the whitesheet (*sic*) put out by UCLA in August 2003." E--mail from Brian Anderson, Posey sales representative, Exhibit 9.

24.    Posey's false advertising is aimed at HipSaver; we are its only significant competition for hip protectors. Posey's advertising campaign is particularly damaging because of the lack of knowledge among health care buyers and Posey's marketplace dominance. Hip protection products are new; neither the biomechanics nor the relative performance of competing products has been well understood in the marketplace. Buyers are susceptible to being misled by deceptive advertising masked in pseudo scientific certainty, precisely the strategy pursued by Posey. And once a buyer is subject to misinformation and has formed an impression that Posey is "superior" to HipSaver and other products, it is very difficult to overcome that misinformation.

25.    With Posey's dominance in the marketplace, its claim to superiority makes it an easy, "safe" choice. The problem, of course, is that the "safe" choice is fraudulent. The problem for HipSaver is that as the victim of fraud, we cannot hold out against Posey.

26.    We are a small, single product company competing against a dominant, multi-line company. Prior to the current false advertising blitz, HipSaver competed with some success and on the basis of a demonstrated record of product safety and durability. Faced now with more than 50,000 copies of "White Paper" and catalog advertising which falsely compares HipSaver's product safety, the Plaintiff faces the short term prospect of

being shut out of the marketplace. Indeed, within the past month, at least one major purchaser, has declined to consider HipSaver further, expressly opting for Posey's HIPSTER.

26.     HipSaver does not have the financial resources or the presence in the marketplace to counter Posey's fraudulent campaign.

 

       s/ Edward L. Goodwin
       Edward L. Goodwin
       June 17, 2004

02820/00501  317406.1