**EXHIBIT "B"**

July 8, 2004

Mr. William J. Brutocao
Sheldon & Mak PC
225 South Lake Avenue, 9th Floor
Pasadena, CA 91101

RE: Hipsaver v. Posey

Dear Mr. Brutocao,

1. At your request, I am submitting this preliminary summary of my opinions on the case noted above. My opinions are based on my education and experience in the field of orthopaedic biomechanics which I will detail briefly below. As well I have considerable experience supervising graduate students and conducting unbiased and unfettered industry sponsored research. As you know, my time to arrive at these opinions has been rather limited, and if requested, I am willing to commit to a more in depth review of the pertinent literature.

*Qualifications*

2. I am currently employed as an Associate Professor of Research in the Department of Orthopaedic Surgery, Keck-USC School of Medicine. I also have an appointment at the Associate Professor level in the USC Biomedical Engineering Department where I teach mechanical properties of biomaterials. I have been Director of the USC Orthopaedic Research Laboratory for the past 10 years. Prior to that I conducted orthopaedic biomechanics research for The Toronto Hospital for 9 years during which I also completed my Ph.D. studies in the field of bioengineering. My first 2 years of orthopaedic biomechanics research experience came as a graduate student at MIT in the Department of Mechanical Engineering. My undergraduate mechanical engineering degree was from the University of Minnesota, Institute of Technology.

3. I have considerable experience in most areas of orthopaedic biomechanics with a primary focus in spinal biomechanics. Pertinent to this case, I participated in a study with Dr. Brian Maki evaluating the force attenuating effects of different floor coverings using an inverted pendulum type hip impact model. I have 10 years of experience supervising biomedical engineering graduate students. I've authored approximately 40 technical reports on industry sponsored research in addition to my peer reviewed publications. Likewise, I've served as a reviewer for several different journals.

4. You are already in possession of a recent copy of my curriculum vitae.

*Documents Reviewed*

5. I have reviewed the following documents prior to making this preliminary opinion:
- Thesis of Bimal Gandhi
- Table of results of materials in pouch testing
- Opinion letter of Dr. Hayes
- The "White Paper" of Mr. Gandhi
- Advertisement for Posey Hipsters
- HipSaver paper claiming air bag effect

*Opinions*

6. Having reviewed the thesis, I would conclude that this study design constitutes a reasonable methodology for impact testing of hip protector foam inserts in a pseudo-physiologic environment. I note that all study designs have strengths and weaknesses. Every model has limitations or it would be the real thing, not a model. Likewise, creative differences in model designs and experimental parameters can be of great value in science, providing perspective. It seems to me that these experiments were conducted in an appropriate manner, The Scientific Method having been applied, hypothesis testing performed adequately, preliminary review of the literature was used to determine model and experimental parameters.

7. After inspecting a small number of foam inserts from both companies, it is important to point out that these foam pads are highly flexible and deformable, with miniscule rigidity. This observation is critically important when evaluating the appropriateness of the testing method, as I will briefly describe below.

8. I note that "the airbag effect" described in detail with many claims in the HipSaver paper is not supported by scientific data in the paper, nor is this data referenced.

9. With all due respect to Dr. Hayes, and I must comment that there are very few of Toby's stature in the realm of orthopaedic biomechanics, I must take issue with a few of his statements. The following statements made by Dr. Hayes, while central to his very strong dismissal of Mr. Gandhi's study as "[fundamentally and fatally flawed]", "unreliable", "inaccurate", and "completely unrepresentative of a fall on the hip", are relatively unsupported in his submitted report. I am of the opinion that these judgments are overly severe.

10. The primary reason given for this very severe assessment was the relatively small diameter of the impacting surface in Mr. Gandhi's study. First of all it should be noted that Gandhi selected this contact surface area based on a measurement in the scientific literature of "contact surface area … in fall patients". Setting aside the appropriateness of this selection, the means by which this decision was made seems appropriate. Secondly, Hayes describes Kannus' "peer-reviewed" impact device as having 3 times the cross-sectional area, meaning 5 inches in diameter (I'm assuming, not having reviewed the paper, that Kannus' device was also circular) instead of Gandhi's "fatally flawed" 3 inches. To me, it seems these dimensions are far too close to each other to deem only one of them "fatally flawed", and making only one of these studies "completely unrepresentative of a fall on the hip". Considering that the Kannus paper has successfully undergone peer review and was published in a mainstream technical journal, it seems unlikely that this testing feature is highly problematic.

11. It is not simply a matter of modeling a fall on a 'soup can' versus a fall on the floor (or a 'Campbell's soup can' versus the peer-reviewed and acceptable 'beef stew can' used by Kannus), but a matter of determining whether the force dissipation outside of the 3 inch diameter is consequential for highly flexible foam materials and the underlying non-rigid soft-tissue analogs. Perhaps it IS of great consequence. I would even go so far as to say that it is likely to be consequential for rigid devices (neither of the company's devices satisfying this criteria). But this is not in my opinion an obvious, non-debatable and unacceptable error, clearly rendering unreliable and potentially biased results. Considering the severity of his judgments, one must assume that Dr. Hayes can produce some data from the scientific literature, available to Mr. Gandhi but ignored, that demonstrates a substantial amount of force attenuation in that outer 1 inch radius. Yet even if such data is readily available, the case that this omitted dissipation produces a bias in these comparative tests has not been made.

12. Professor Hayes also states that there is an "obvious improvement in force attenuation … provided by a larger pad". Yes, it is obvious that a larger pad could attenuate more force. But we should be careful not to assume, without scientific evidence, that the additional area will necessarily contact the floor during the impact phase. Not having reviewed all of the literature at this point, I admit that this data could possibly exist. But I am not aware of it and it has not been offered by Professor Hayes. It is also not at all obvious that this somewhat larger attenuation will be meaningful (ie. +10% rather than +1%). It is also not obvious that this larger attenuation will be relevant, meaning that the failure to model this amount of additional attenuation would be likely to bias the comparison. Again, Dr. Hayes may have published data of which I'm not aware. But if these data are not readily available, it seems highly inappropriate to

denounce a study as fatally flawed based on one's educated inference alone, without pointing to scientific evidence.

13. In summary on this topic, I would not agree that this study is fatally flawed, or that these flaws are obvious with no chance of a reasonable rebuttal. If reviewing the thesis for publication in a journal, I would certainly insist on a few key revisions to the text (as is always the case, especially for inexperienced authors) but I would not consider it fatally flawed and incurable. The data can certainly be presented in a manner such that it is of value to our scientific community.

Thank you for the opportunity to review this case.

Sincerely,

Tom Hedman, Ph.D.