UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. No. 04-11294-PBS

HIPSAVER COMPANY, INC., )
)
Plaintiff, )
)
v. )
)
J.T. POSEY COMPANY, )
)
Defendant. )

## DECLARATION OF ERNEST M. POSEY

I, Ernest M. Posey, declare:

1. I am the Chief Executive Officer of J.T. Posey Company ("Posey"). The facts recited in this declaration are within my personal knowledge and if called as a witness I could and would testify thereto.

2. Posey is a family-run business, operated by members of the Posey family since it was founded in 1937 by my father John T. Posey.

3. Posey is a well-respected supplier of various products used in the healthcare industry. Posey currently manufactures and sells over 600 healthcare products.

4. Posey is an innovator, having introduced and designed numerous new products. Posey has obtained several patents for various Posey products including U.S. Patent Numbers 4,685,454 for a Sleeved Jacket Restraint Device, 5,076,288 for a Double-lock Friction Fastener System,

1

3,437,089 for a Restraining Belt, 3,216,917 for a Protective Shield, and 2,851,033 for Supporting Means in Wheel Chair.

5. The accusation by Edward Goodwin that Posey "knocks off" products from other companies is untrue. Posey develops and designs its own products according to customer requests and market research. This is the case with the Hipster.

6. The changes in design of the Posey Hipster since it was first introduced in 1999 are not unusual. All Posey Products are constantly under review for improvements in the manufacturing process, materials, or changes that may be requested from market research or customer feedback. It is very common that a new product goes through design changes in response customer feedback and market research. The Hipster III was introduced in September 2001. The Hipster III is now simply called the Hipster and is the only model that Posey has offered since the end of 2001.

7. I authorized the use of the white paper authored by Bimal P. Gandhi (hereinafter the "White Paper") to be distributed to Posey customers. It has always been my understanding that in writing the White Paper Mr. Gandhi accurately summarized the results of tests he performed under the direction of Professor Vijay Gupta at UCLA. Posey never at any time attempted to influence the manner in which Mr. Gandhi conducted his tests, his conclusions, or what to include in or exclude from the White Paper. The only specific request that Posey made to Dr. Gupta and Mr. Gandhi was that the foam pads used in the Hipster and HipSaver products be tested inside their pouches. To the best of my knowledge, information, and belief, Mr. Gandhi did in fact test the pads inside their pouches.

8. Because HipSaver contests the accuracy of the White Paper, I have instructed Posey personnel to discontinue use of the White Paper. The White Paper was first distributed by Posey in November 2003, and was discontinued on June 18, 2004.

9. The allegation by Mr. Goodwin that Posey's use of the White Paper has caused HipSaver to lose sales to Posey is not reflected in our sales trends.

10. I have analyzed the sales figures of Posey Hipsters from January 2002 through June 2004. There is no indication in the trends of those sales to suggest that Posey sales were in any way affected by the distribution of the White Paper.

11. During 2002, sales of Posey Hipsters on a monthly basis increased significantly. Sales between January 2002 and December 2002 tripled.

12. Since December 2002, sales have continued to increase, but at a lower rate than in 2002.

13. Comparing the average monthly sales in 2002 and 2003 shows that the average monthly sales in 2003 were about 41% higher than in 2002.

14. Due to annual fluctuations in sales, the sales in December 2003 were almost the same as the sales in December 2002, and in fact the December 2003 sales were slightly lower than the December 2002 sales. Thus the White Paper had no apparent effect in 2003 on Posey sales.

15. During 2004 monthly sales have been relatively constant, with the exception of the month of March 2004 in which sales were significantly higher than any other month. Thus there has been no apparent effect on sales in 2004 by the White Paper. As described more fully in paragraphs 20 and 21 below, the higher sales figures for March are due to a

substantial order from a specific customer, which had nothing to do with the White Paper.

16. I have compared the average monthly sales for the eight months from November 2003 through June 2004, which is the period during which Posey distributed the White Paper, and the eight months prior thereto, i.e. March 2003 through October 2003. For convenience, the eight-month period from November 2003 through June 2004 is referred to herein as the "Post-White Paper Period" and the eight-month period from March through October 2003 is referred to as the "Pre-White Paper Period."

17. I have compared these figures in two ways: (a) excluding the specific sale in March 2004 (described in more detail in paragraphs 20 and 21 below), and (b) including that sale. First, excluding that one sale, the comparison shows that the average monthly sales during the 8-month Post-White Paper Period were about 25% higher than average sales during the 8-month Pre-White Paper Period. Second, including that one sale, shows that the average monthly sales during the 8-month Post-White Paper Period were about 30% higher than average sales during the 8-month Pre-White Paper Period.

18. This modest increase is consistent with the trend for sales of the Posey Hipster. It is common and expected that sales of a new or redesigned product would exhibit the same trends as our sales figures show for the Hipster. That is, sales increased significantly in the first year, and continued to increase in the following years, although not as rapidly as in the first year. In other words, Posey's actual sales from November 2003 through June 2004 are right in line with projected sales based on the trend of Posey's sales since before November 2003. For example, this

increase of 25% to 30% is less than the increase from 2002 to 2003, which was 41%. If the increase for the eight-month period were annualized, it would still be in line with the trend.

19. Mr. Goodwin also complains that HipSaver lost a relatively large customer who chose the Posey Hipster instead of the HipSaver. I have asked Mr. Goodwin via email correspondence to identify that customer, but Mr. Goodwin did not reply. I believe that Mr. Goodwin is probably referring to the specific sale in March 2004, referred to in paragraph 15 above and described in paragraphs 20 and 21 below.

20. I am aware of only one significant customer that changed from HipSaver to Posey. That customer is Campeire Ltd. in Cork, Ireland ("Campeire"). In March 2004 Posey made a large sale to Campeire through a Posey distributor in the amount of $42,044.25. The sale to Campeire is in fact one of Posey's largest sales of Posey Hipsters. Primarily as a consequence of the sale to Campeire, Posey's Hipster sales for that particular month were about $60,000 higher than sales in any month before or since.

21. I have spoken with Martin Ryan, the Sales Director for Campeire. Mr. Ryan confirmed that his company switched from HipSaver to Posey. The reasons he gave were that:

   a. the Posey brand is less expensive than the HipSaver and he was looking for an alternative hip protector at a more reasonable price;
   b. Posey is a very well-known brand name in the Republic of Ireland;
   c. the Posey brand has a reputation for quality, and the customers to whom he has sold Posey products in the past have been very satisfied and re-ordered.

The White Paper had nothing to do with Mr. Ryan's decision to switch from HipSaver to Posey. I have checked Posey records and confirmed that the White Paper was never sent to Campeire. Mr. Ryan has attested to these facts in a declaration that will be submitted to the Court along with this declaration.

22. There are several reasons why customers might choose the Posey Hipster instead of the HipSaver. First, as occurred with respect to the sale to Campeire, customers select the Posey Hipster because the price of the Posey Hipster is lower than the price of the HipSaver. Second, Mr. Goodwin's company offers basically only one product. By contrast, Posey offers hundreds of products, and many of Posey's customers prefer to purchase several products from the same company, rather than having to purchase products from several different companies. Third, Posey has a well-established network of dealers and distributors. Fourth, Posey has an excellent reputation among its many customers. In addition, it is well-known that the population is aging. Because the risk of hip fracture is most acute among the elderly, the demand for hip protectors has been increasing. This factor alone accounts for the fact that the sales trend is on the rise. These are among the reasons why Posey has been successful in selling the Posey Hipster.

23. As detailed above, it is extremely unlikely that HipSaver has had its sales affected by the White Paper. Even if there has been an effect, it is miniscule. As explained above, there has not been any significant increase in Posey Hipster sales since the White Paper was introduced. The actual increases in sales have been right in line with the sales trend. Furthermore, even if it were assumed that all increases of Hipster sales since October 2003 were attributable to the White Paper, the total

increase in Posey's profits for the entire period of time since then is less than $70,000.

24. Posey's annual sales of all products are well in excess of $30,000,000.00. Thus, if in fact HipSaver has actually suffered any damages from anything Posey has done that is wrongful, which I do not believe is the case, Posey can easily respond in money.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 29 day of July, 2004 at Arcadia, California.

_Ernest M. Posey_
Ernest M. Posey

7