UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-11294-PBS

HIPSAVER COMPANY, INC., )
)
Plaintiff, )
)
v. )
)
J.T. POSEY COMPANY, )
)
Defendant. )

## MOTION OF DEFENDANT J.T. POSEY COMPANY'S FOR SANCTIONS

### I. INTRODUCTION

Defendant J.T. Posey Company ("Posey") brings this Motion for Sanctions because Plaintiff HipSaver Company, Inc. ("HipSaver") has committed fraud on this Court. Specifically, HipSaver has submitted to this Court the perjurious Affidavit of Edward L. Goodwin ("Goodwin's Affidavit"). The entire thrust of the Complaint and papers in support of HipSaver's Motion for a Preliminary Injunction ("HipSaver's Motion") are based on material false statements that HipSaver products were not even tested and that the hip protectors were not tested "in the pouches." These arguments are in turn based on Goodwin's false statements.

As a result of HipSaver's egregious conduct, Posey hereby requests the following:

1. Dismiss this case; or, if the Court does not grant this relief;

2. Deny HipSaver's Motion for a Preliminary Injunction in its entirety; or, if the Court does not grant this relief;

3. For the papers filed in support of HipSaver's Motion, (a) strike portions of Goodwin's Affidavit that are false; (b) strike portions of the Preliminary and Supplemental Reports of Wilson C. Hayes, Ph.D. that rely on false statements provided by Goodwin; and (c) strike portions of HipSaver's briefs that rely on false statements provided by Goodwin; or, if the Court does not grant this relief;

4. (a) Continue the preliminary injunction hearing; and (b) require HipSaver to make Goodwin available for deposition prior to the preliminary injunction hearing; and

5. Impose monetary sanctions against HipSaver at least in the amount of Posey's attorneys' fees and costs in bringing this Motion.

## II. FACTUAL BACKGROUND

HipSaver's Motion accuses Posey of false advertising and knocking off HipSaver's hip protector.[1] Posey's advertising of its hip protector, the "Hipster", is based on a study conducted by Bimal P. Gandhi ("Mr. Gandhi") while in the graduate program of the Department of Biomedical Engineering at University of California at Los Angeles ("UCLA"), under the direction of his supervising professor, Vijay Gupta Ph.D. ("Dr. Gupta").[2] Mr. Gandhi's thesis (the "Thesis") is directed to analyzing and comparing various hip protectors, including Posey's and HipSaver's hip protectors.[3]

Mr. Gandhi also prepared a "White Paper," which contains his research results.[4] HipSaver's complaints in its Motion for a Preliminary Injunction are directed to Posey's

---

[1] See Memorandum Of Law In Support Of HipSaver's Motion For A Preliminary Injunction ("Memo").

[2] See Memo at pages 4-5; Exhibits 4, 5 and 7 to HipSaver's Motion.

[3] See Exhibit 7 to HipSaver's Motion.

[4] See Exhibit 6 to HipSaver's Motion.

distribution of this White Paper, and Posey's advertising in its catalogs reporting the results of Mr. Gandhi's study.[5]

### A. GOODWIN'S PERJURY

Using Goodwin's Affidavit as support for the arguments in its Motion, HipSaver repeatedly and emphatically argues that (1) "HipSaver products were not even tested" because Posey tested a "SlimSaver" which is not HipSaver's product, and HipSaver protectors are pink/orange but not blue; and (2) "the test protocol did not include tests of hip protectors" because the hip protectors were not tested in their plastic pouches. Specifically, Goodwin makes the following perjurious statements in his Affidavit:

- "It is clear from this that Mr. Ghandi did not even include our [HipSaver's] products in his study."[6]

- "He [Mr. Gandhi] studied some other product but mistook or mislabeled it as HipSaver."[7]

- "Posey and Mr. Ghandi falsely claim also to have included two HIPSAVER protectors among the five tested 'hip protectors'..."[8]

- "I asked Professor Gupta about this, and he identified the so-called HIPSAVER protectors by color, "blue"...However, as shown in Exhibit 1, HIPSAVER protectors are pink/orange in color...."[9]

- "In fact, his test protocol did _not_ include tests of hip protectors.[10]

---

[5] See Memo at page 5.

[6] See Goodwin's Affidavit at ¶ 16. See also Goodwin's Affidavit at ¶ 19 ("The 'White Paper', which is aimed at HipSaver as Posey's only significant competition, next makes the literally false statement that HipSaver protectors were tested when, in fact, none was tested.").

[7] See Goodwin's Affidavit at ¶ 16.

[8] See Goodwin's Affidavit at ¶ 16.

[9] See Goodwin's Affidavit at ¶ 16.

[10] See Goodwin's Affidavit at ¶ 13.

- "Mr. Ghandi and Professor Gupta have both acknowledged that the hip protectors were stripped and reduced to core materials only."[11]

- "Only the core materials of certain hip protectors were tested."[12]

Not only are these statements completely false, but Goodwin was aware that these statements were false before filing the lawsuit.

Outrageously, Goodwin claims HipSaver's protectors were not even tested. However, more than three months before filing the lawsuit, Mr. Gandhi informed Goodwin that two of its products were tested - the HipSaver nursing home model and the HipSaver SlimFit, which Mr. Gandhi explained was misnamed as the "Slimsaver" in his Thesis. Email correspondence between Goodwin to Mr. Gandhi evidences Goodwin's knowledge that two of his products were tested. Goodwin emailed Mr. Gandhi on January 22, 2004: "we have a model called the SlimFit HipSaver. Is the product listed as Slimsaver a SlimFit or is it the product of another manufacturer other than HipSaver?" Mr. Gandhi's reply email to Goodwin dated January 26, 2004 states: "Yes, the product listed as Slimsaver is the Hipsaver Slimfit model."[13]

To further support its argument that Mr. Gandhi did not test HipSaver's protectors, HipSaver contends that its hip protectors do not contain blue foam. This

---

[11] See Goodwin's Affidavit at ¶ 13. See also Goodwin's Affidavit at ¶ 13 ("…Mr. Ghandi stripped, discarded, and excluded the pouches from the tests."); Goodwin's Affidavit at ¶ 19 ("in fact, only stripped core materials were tested.").

[12] See Goodwin's Affidavit at ¶ 19.

[13] See Declaration of Victoria Gay Lewis, Exhibit A, at ¶¶ 18-21 and 32 and Declaration of John Ross Frymark at ¶¶ 10 and 24 attached to Posey's Opposition to HipSaver's Motion for a Preliminary Injunction.

4

preposterous statement is completely false, as evidenced by the colored photographs submitted herewith that show HipSaver's protectors contain blue foam.[14]

Moreover, Goodwin lies by asserting that the hip protectors were not tested in their pouches. But Mr. Dailey's letter dated August 9, 2004 admits that HipSaver knew, before filing the lawsuit, that the products were tested both inside and outside their pouches: "Prior to the lawsuit, we had learned from Professor Gupta…that 'in their pouches' data was available."[15]

### B.  GOODWIN'S PERJURY HAS RESULTED IN NUMEROUS FALSE STATEMENTS MATERIAL TO HIPSAVER'S MOTION

Not only has Goodwin lied to the Court, but apparently he has lied to his attorney and expert witness. The briefs and Professor Hayes' report filed in support of HipSaver's Motion heavily rely on Goodwin's averments that HipSaver products were not tested and only the core materials of the protectors were tested.

For example, Professor Hayes confidently asserts:

- "In fact, given that Mr. Gandhi was testing foam inserts and not hip protectors, he should have followed the protocols defined by ASTM standard for the testing of foams."[16]

- "…his study is scientifically unreliable for characterizing either the foam inserts themselves of the hip protectors from which the inserts have been removed."[17]

- "HipSaver does not have a blue foam product."[18]

---

[14] See Exhibits A-G to Declaration of John Ross Frymark ("Frymark Decl."), attached hereto.

[15] See Exhibit H to Declaration of William J. Brutocao ("Brutocao Decl."), attached hereto.

[16] See Wilson C. Hayes Supplemental Report at ¶ 5, attached as Tab 2 to HipSaver's Reply ("Hayes' Supplemental Report").

[17] See Hayes' Supplemental Report at ¶ 5.

[18] See Hayes' Supplemental Report at ¶ 10.

Likewise, the Memo and Reply brief in support of HipSaver's Motion and Complaint assuredly assert that HipSaver products were not tested and hip protectors were not tested at all, despite the falsity of these statements:

- "Posey and Mr. Ghandi falsely claim also to have included two HIPSAVER protectors among the five tested 'hip protectors'..."[19]

- "In fact, *HipSaver products were not even tested*..."[20]

- "In short, the threshold claim that HipSaver products were tested is itself false."[21]

- "Not the least of these flaws is the fact that Mr. Gandhi...did not test HipSaver products."[22]

- "Mr. Gandhi did *not* test and report on hip protectors but rather tested only 'foam inserts...'"[23]

- "...the Plaintiff does not manufacture or offer the so-called blue foam product identified by Mr. Gandhi as a HipSaver product..."[24]

---

[19] *See* Complaint at ¶ 15. *See also* Complaint at ¶ 20 ("The 'White Paper' next makes the literally false statement that HipSaver protectors were tested when, in fact, none was tested.").

[20] *See* Complaint at page 2 (emphasis in original).

[21] *See* Memo at page 6.

[22] *See* Reply at page 5, footnote 2 (emphasis in original).

[23] *See* Reply at page 6. *See also* Complaint at ¶ 13 ("Only the core materials of certain hip protectors were tested."); Complaint at ¶ 13 ("As a consequence and in direct contradiction of representations by Posey and Mr. Ghandi, hip protectors were *not tested*."); Complaint at ¶ 16 ("Posey and Mr. Ghandi have intentionally and fraudulent [sic] misrepresented *what* was tested (stripped core materials rather than hip protectors)."); Memo at page 5 "(Expandable air holding pouches...were discarded and excluded from the tests. This material fact was secreted by Mr. Ghandi..."); Memo at page 6 ("Notwithstanding the fact that Posey and Mr. Ghandi have misrepresented what was tested (the stripped core materials rather than hip protectors) and then failed even to test HipSaver products..."); Memo at page 13 ("Posey and Mr. Ghandi claim to have tested hip protectors when both clearly knew that the test evaluated only a component of the hip protectors.") (Emphasis in original.)

[24] *See* Reply at page 5.

Goodwin knew these statements, and the several other statements identified above, to be false well before this lawsuit was filed. Nevertheless, the core of HipSaver's lawsuit and Motion for Preliminary Injunction is based on perjury.

### C.   HIPSAVER'S UNSUPPORTED FALSE STATEMENTS

In addition to committing perjury, HipSaver makes several statements in its papers that entirely lack evidentiary support. HipSaver has launched an unjustified, vicious attack on Posey attempting to paint a picture of Posey as an "aggressive" company that will act illegally to "thwart" its competitors. Aside from being irrelevant, this is simply untrue. The following attacks on Posey completely lack evidentiary support:

- "Posey routinely copies the work of other companies and then uses its market dominance to introduce 'knock-off' products to the market."[25]

- "Posey's strategy is to so disparage and discredit HipSaver's product safety that it will shortly be driven from business."[26]

- Posey does not have an internal research, design, and development staff for products involving anything more sophisticated than simple cut and sewn fabric.[27]

---

[25] See Goodwin's Affidavit at ¶ 4. See also Goodwin's Affidavit at ¶ 7 and Complaint at ¶ 11 ("Posey then copied much of the design of the HIPSAVER protector and introduced a knockoff marketed initially as the HIPSTER III."); Goodwin's Affidavit at ¶ 8 ("Posey's HIPSTER knock-off copies HipSaver's design."); Complaint at page 1 ("Posey does not invent new products; rather, its standard operating procedure is to copy and 'knock-off' competitor products."); Complaint at ¶ 5 ("And rather than develop and fund an internal expertise, Posey copies the work of other companies and then uses its market dominance to introduce 'knock-off' products to the market."); Memo at page 16 ("Defendant has targeted a Massachusetts based company which is its primary competition, it has copied and 'knocked-off' the products of a Massachusetts based company...").

[26] See Memo at page 2. See also Memo at page 4 ("Apparently, Posey has recognized that its knock-off is vulnerable to safety and quality concerns. So, it has embarked on a campaign to disparage and discredit HipSaver by challenging the safety of HipSaver protectors.").

[27] See Complaint at ¶ 5.

These statements are false, as well as unsupported by the record. Posey has not "knocked-off" HipSaver's hip protectors, as explicitly acknowledged by Goodwin in an email noting that Posey's hip protector does not infringe his patent, U.S. Patent No. 6,519,780, entitled "Air-Holding Protective Foam Pad."[28] Instead, Posey's development of its hip protectors is a result of hard work and innovation of its research and development department, and is based on customer demand and market research.[29]

HipSaver's endless use of inaccurate and unsupported statements, in addition to perjury, warrants sanctions.

### III. LEGAL ARGUMENT

#### A. DISMISSAL AND MONETARY SANCTIONS ARE APPROPRIATE FOR PERJURY

Sanctions may be imposed under the Court's inherent powers. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-65, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (inherent powers of federal courts include the well-acknowledged inherent power to dismiss case and impose monetary sanctions in response to abusive litigation practices). In *Link v. Wabash R. Co.*, 370 U.S. 626, 632, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962), the Supreme Court recognized the "well-acknowledged" inherent power of a court to levy sanctions in response to abusive litigation practices:

---

[28] *See* Declaration of William J. Brutocao, Exhibit B, ¶ 4, attached to attached to Posey's Motion for an Order (1) Permitting Expedited Discover; (2) Extending Time to File Opposition to Plaintiff's Motion for a Preliminary Injunction; (3) Continuing the Hearing on Plaintiff's Motion for a Preliminary Injunction ("Posey's Expedited Discovery Motion").

[29] *See* Declaration of Ernest M. Posey at ¶¶ 5 and 6 and Declaration of Victoria Gay Lewis at ¶¶ 7 and 10-13, attached to Posey's Opposition.

> The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts.

*Id.* at 629-630, 82 S.Ct. at 1388 (footnote omitted) (dismissing action with prejudice for failure to prosecute).

The inherent power to sanction extends to a full range of litigation abuses. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct. 2134 (1991) (where party filed false pleadings, but Rule 11 sanctions were unavailable because fraud in pleadings was not discovered until after trial, Supreme Court affirmed lower court's decision to impose monetary sanctions based on its inherent power). "[A] district court may use its inherent powers to sanction a party that has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Whitney Bros. Co. v. Sprafkin*, 60 F.3d 8, 13 (1st Cir. 1995), citing, *Chambers, supra,* 501 U.S. at 45-46, 111 S.Ct. at 2133. The First Circuit finds that perjury is grounds for finding bad faith: "We have no doubt that when a party has materially perjured himself, this, standing alone, is sufficient grounds for finding bad faith." *Whitney Bros.*, 60 F.3d at 13; *Aoude v. Mobile Oil, Corp.*, 892 F.2d 1115, 1117-1118 (1st Cir. 1989) (it is "elementary that a federal district court possesses the inherent power to deny the court's processes to one who defies the judicial system by committing a fraud on the court.").

Courts nation-wide concur that a court retains the inherent power to dismiss an action where there is evidence of perjury. *Chambers, supra,* 501 U.S. at 45, 111 S.Ct at

2133; *Aoude, supra*, 892 F.2d at 1119 (dismissing case due to party's submitting a false document to court).[30]

Additionally, "[a]n assessment of attorneys' fees is undoubtedly within a court's inherent power." *Chambers, supra,* 501 U.S. at 45, 111 S.Ct at 2133; *see also Link, supra*, 447 U.S. at 765, 100 S.Ct., at 2463; *Syrjala v. Total Healthcare Solutions, Inc.*, 186 F.R.D. 251 (D. Mass. 1999) ("pursuant to the inherent power of the court" monetary sanction imposed for defense attorney's filing of premature motion for protective order, before plaintiff's counsel had at least seven days to respond to his alleged "request" for discovery conference); *Hull v. Municipality of San Juan*, 230 F. Supp. 2d 239, 248 (D.P.R. 2002) (case dismissed and monetary sanctions imposed where plaintiff committed fraud on court by failing to disclose material evidence).

### B. HIPSAVER'S GROSS MISBEHAVIOR CONSTITUTES FRAUD ON THE COURT

HipSaver's conduct, that is, filing papers saturated with lies and unsupported allegations, *that HipSaver knew to be false before the lawsuit was filed*, is an abuse of the judicial system mandating dismissal of this action.

---

[30] Dismissal for perjury is common among the majority of circuits. *See Allen v. Chicago Transit Authority*, 317 F.3d 696, 703 (7th Cir. 2003) ("Perjury committed in the course of legal proceedings is a fraud on the court, and it is arguable that a litigant who defrauds the court should not be permitted to continue to press his case."); *Thomas v. General Motors Acceptance Corp.*, 288 F.3d 305, 306-07 (7th Cir. 2002) (affirming district court's dismissal of lawsuit with prejudice due to perjury); *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 695 (8th Cir. 2001) (dismissing case for perjury: "When a litigant's conduct abuses the judicial process, dismissal of a lawsuit is a remedy within the inherent power of the court."); *Keefer v. Provident Life & Accident Ins. Co.*, 238 F.3d 937, 940 (8th Cir. 2000) (dismissing case due to obliteration of discovery); *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 986 (4th Cir. 1987) (fraud on court may exist where witness and attorney conspire to present perjured testimony); *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir. 1983) (deliberate deception justified sanction of dismissal: "Courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice."); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978) (case dismissed where party, with counsel's collusion, fabricates evidence).

The heart of HipSaver's Motion and Reply is that Mr. Gandhi did not test HipSaver's protectors. However, Mr. Gandhi informed Goodwin in writing that the HipSaver products were tested.[31] Further, the claims that HipSaver products were not tested because HipSaver protectors do not contain blue foam is completely false, as shown in the photographs accompanying this Motion.[32]

The other central argument in HipSaver's Motion and Reply is that the foams of the hip protectors were tested without the pouches. But HipSaver's counsel admits that HipSaver knew, prior to filing the lawsuit, that the products were tested in their plastic pouches.[33]

HipSaver's perjuries are material to the case, as these arguments are repeated several times to form the basis of HipSaver's Motion and Reply. Falsely alleging that Mr. Gandhi did not even test HipSaver products is a gross distortion of material and highly relevant facts. Accordingly, HipSaver's fraudulent behavior warrants dismissal of this case, or at the least, denial of HipSaver's Motion.

## IV.  CONCLUSION

For the foregoing reasons, the Court should (1) dismiss this case; (2) deny HipSaver's Motion in its entirety; (3) strike portions of Goodwin's Affidavit, Professor Hayes' Preliminary and Supplemental Reports, and HipSaver's briefs that rely on false and speculative statements of Goodwin; or (4) require HipSaver to provide Goodwin for

---

[31] *See* Declaration of Victoria Gay Lewis, Exhibit A, at ¶¶ 18-21 and 32 and Declaration of John Ross Frymark at ¶¶ 10 and 24 attached to Posey's Opposition to HipSaver's Motion for a Preliminary Injunction.

[32] *See* Exhibit A-G to Frymark Decl., attached hereto.

[33] *See* Exhibit H to Brutocao Decl., attached hereto.

deposition and continue the hearing date until this deposition is conducted. Irrespective of the above relief, this Court should sanction HipSaver, at least in the amount of attorneys' fees and costs incurred by Posey to bring this Motion.

> J.T. POSEY COMPANY
>
> By its attorneys,
>
> _____/s/ Anthony J. Fitzpatrick\_\_\_\_\_
> Anthony J. Fitzpatrick (BBO # 564324)
> DUANE MORRIS LLP
> 470 Atlantic Avenue, Suite 500
> Boston, MA 02210
> (617) 289-9200
>
> Jeffrey G. Sheldon (CA Bar No. 67516)
> William J. Brutocao (CA Bar No. 75959)
> SHELDON & MAK
> 225 South Lake Avenue, Suite 900
> Pasadena, CA 91001
> (626) 796-4000

## CERTIFICATION UNDER L.R. 7.1(A)(2)

The undersigned counsel for the defendant J.T. Posey Company ("Posey") hereby certifies that counsel for Posey has conferred with plaintiff's counsel by voicemail and e-mail and has attempted in good faith to resolve or narrow the issue raised by this motion.

> _____/s/ Anthony J. Fitzpatrick\_\_\_\_\_
> Anthony J. Fitzpatrick

August 18, 2004